CHARLES T. WOODRUFF, Appellant, *v.* THE BRADSTREET
COMPANY, Respondent.

Defendant, a mercantile agency, published a statement to the effect that a
judgment for $4,000 had been rendered against plaintiff, who was engaged
in a manufacturing business, which statement was untrue. In an action
for libel, *held,* that the words were not, in themselves, libelous as an
imputation against the soundness of plaintiff's financial condition, and
as there was no ambiguity or uncertainty about their import, the ques-
tion as to whether they were libelous was not one for the jury, but one
of law for the court; and that, therefore, the complaint was properly
dismissed.

*It seems* that, upon averment and proof of special damages resulting from
such a false publication, an action would be sustainable.

*Williams* v. *Smith* (L. R., 22 Q. B. Div. 134); *King* v. *Patterson* (49 N. J. L.
417) distinguished.

Reported below, 35 Hun, 16.

(Argued June 25, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Supreme
Court in the fourth judicial department, entered upon an order
made at the October term, 1884, which affirmed a judgment
in favor of defendant, entered upon an order dismissing the
complaint on trial.

The action was brought for alleged libel founded upon the
publication by the defendant of the following:

"WATERTOWN.— Robinson, J. S., printer, binder and mfr.,
woolens. Judgment v. him and C. T. Woodruff $4 M."

Upon the complaint and opening, the complaint was dismissed.

The substance of the complaint and the opening is stated in
the opinion.

*Hannibal Smith* for appellant. If the publication of the
fact of the recovery of a judgment of $4,000 against the
plaintiff in itself tended to the injury of the plaintiff's credit,
it was libelous *per se.* (Olgers on Libel and Slander, 78;
Starkie on Slander and Libel, § 117; *Whittington* v. *Glad-
win,* 2 C. & P. 64; *Mott* v. *Comstock,* 7 Cow. 654; *Sewall* v.
*Catlin,* 3 Wend. 292; *Shepheard* v. *Whitaker,* 10 C. P. 502;

SICKELS —VOL. LXXI.    28

14 Moak, 395; *Sanderson* v. *Caldwell,* 45 N. Y. 398, 405;. *King* v. *Patterson,* 49 N. J. L. 417; 60 Am. Rep. 622; 36 Alb. L. J. 226.) The court should have left it to the jury to say whether the words tended to the injury of the plaintiff's credit, and the amount of injury upon the proof of the circumstances of the case, on the ground that the words upon such finding were actionable *per se.* (*Lewis* v. *Chapman,* 16 N. Y. 371; *Caisley* v. *Bradstreet Co.,* 3 Montreal Rep. 83;. *Erber* v. *Dun,* 12 Fed. Rep. 536; 31 Eng. Rep. 111, 112; *Shepheard* v. *Whitaker,* Eng. R., 14 Moak's Notes, 396; *Patch* v. *Tribune Assn.,* 38 Hun, 368; *Williams* v. *Smith,* 22 Q. B. Div. 134; Alb. L. J., March 30, 1889; 39 id. 247; 31 id. 83; *King* v. *Patterson,* 49 N. J. L. 417; 60 Am. Rep. 22; *Samuels* v. *E. M. Assn.,* 9 Hun, 294; 75 N. Y. 604; *Baylis* v. *Lawrence,* 11 A. & El. 920; 39 Eng. C. L. 270; *Harwood* v. *Keech,* 4 Hun, 388; *Ryan* v. *Collins,* 111 N. Y. 143; 21 N. W. Rep. 862; 33 Minn. 66.) The publication being general and not made specifically to one asking for information and interested, express malice need not be proved, and the communication is not privileged. (*Sunderlin* v. *Bradstreet,* 46 N. Y. 188; *King* v. *Patterson,* 49 N. J. L. 417; 60 Am. Rep. 22; 36 Alb. L. J. 226.)

*John H. Bird* for respondent. Courts will take judicial notice of the business of mercantile agencies. (83 N.Y. 31; 37 id. 477; 46 id. 188.) The words and figures complained of being unambiguous, it was the exclusive province of the court to determine their construction and to say whether or not, upon their face, they are actionable *per se.* (*Matthews* v. *Beach,* 5 Sandf. 256; *Green* v. *Telfair,* 20 Barb. 11; *Fry* v. *Bennett,* 5 Sandf. 54; *McCurly* v. *Rob,* 20 Johns. 351; *Kerr* v. *Force,* 3 Cranch C. C. 8; Townsend on Slander and Libel, §§ 146–148; 2 Greenl. Ev. §§ 254, 256, 420; *Newbold* v. *Bradstreet,* 57 Md. 52–54.) General damages are only recoverable where the words are actionable *per se.* (22 Md. 399, 416; *Johnson* v. *Robertson,* 8 Porter, 486; *Bassel* v. *Elmore,* 65 Barb. 627.) The language not being actionable *per se,* special damage

must be alleged. Unless specially alleged damages cannot be proven. (*Squier* v. *Gould,* 14 Wend. 159·; *Strang* v. *White-head,* 12 id. 64; *Johnson* v. *Robertson,* 8 Porter, 486; *Bassel* v. *Elmore,* 65 Barb. 627; 1 Chitty's Pl. 386; *Tobias* v. *Harland,* 4 Wend. 537.)

BRADLEY, J. The question presented is whether, in any view which can be taken of the publication, the words there used were libelous *per se.* The plaintiff was engaged in the business of manufacturing and selling brick in the city of Watertown. It must be assumed that at the time of the publication he was in good financial and business standing, and that the publication as to him was false. His reputation in that respect was his property, and he had the right to its protection against defamation. And any published imputation against him in that relation, which could be so construed as to import insolvency or a condition of financial embarrassment, would be ground for an action, because it is the policy of the law to afford protection to the credit of merchants and traders, for reasons which it is now unnecessary to repeat . The plaintiff came within that class, and his reputation in relation to his business, as such, was entitled to such protection. (*Mott* v. *Comstock,* 7 Cow. 654; *Sewall* v. *Catlin,* 3 Wend. 291; *Ostrom* v. *Calkins,* 5 id. 263; *Carpenter* v. *Dennis,* 3 Sandf. 305.) The plaintiff has not sought to support this action by any charge of special damages, but rests it solely upon the ground that the law will imply that damages have been the consequence of the publication. The inquiry, therefore, is, whether the statement that a judgment for $4,000 had been recovered against the plaintiff was an imputation against his financial credit or pecuniary responsibility.

This must depend solely upon the import which may be given to the words in their relation to him in that respect, without the aid of any extrinsic circumstances to give them any other or different construction or import than the same words would have if published of and concerning any person

within the class before mentioned.   The proposition, therefore, is, whether to publish of a merchant or trader that a judgment has been recovered against him, is the employment of words in themselves libelous or slanderous as an imputation against the soundness of his financial condition.   There is no ambiguity or uncertainty about the import of the words in question. It is when words spoken or published are ambiguous in their import, or may permit, in their construction, connection or application, a doubtful or more than one interpretation, and in some sense may be defamatory, that the question whether they are such is for the jury.  (*Lewis* v. *Chapman*, 16 N. Y. 369 ; *Sanderson* v. *Caldwell*, 45 id. 398.)   In the present case there was no occasion for such inquiry.   The question in that respect was one of law for the court.  (*Matthews* v. *Beach*, 5 Sandf. 256 ; *Green* v. *Telfair*, 20 Barb. 11 ; *Hunt* v. *Bennett*, 19 N. Y. 173, 177 ; *Pittock* v. *O'Neil*, 63 Penn. St. 253.)

It must be taken as true, as alleged in the complaint and stated in the opening, that the organization of the defendant was for the purpose of ascertaining and reporting the financial standing and ability of merchants, traders and other business men throughout the country, and that such reports were from time to time issued and sent to its subscribers.   It is, therefore, argued that the purpose of this report was to affect or impair the credit of the plaintiff, and that such must be presumed to have been its effect.   The circumstances under which a publication is made concerning a party, and the connection or association given to it by other matter published with it, may tend to characterize the words used so as to give to them an import productive of an imputation which otherwise they could not have.   This was illustrated in the case of *Zier* v. *Hofflin* (33 Minn. 66; 53 Am. R. 9); *Shepheard* v. *Whitaker* (L. R., 10 C. P. 502; 14 Moak, 395); *Erber* v. *Dun* (12 Fed. R. 526).   In cases of that character there may be a question for the jury to determine in view of the situation and relation, so represented, and upon their finding may be dependent the question whether the words used are libelous.

In the case at bar there is nothing except the import of the words themselves to characterize their purpose or effect, other than the fact that the business of the defendant was to furnish information of the pecuniary condition of persons whose vocations were such as to be likely to render business credit desirable. It is not seen that the character of the enterprise in which the defendant was engaged gave to the mere statement of what purported to be a fact, anything more than it expressed or fairly implied. The meaning of words in an action of slander or libel, cannot be extended by innuendo beyond their import, aided, as they may be, by extrinsic facts with which they are connected. Its use or purpose is to explain the application of words by connection with such facts and circumstances as are alleged. There are none alleged here which will justify the inference that the publication issued by the defendant carried with it any meaning essentially different than it would have taken from any other source. The fact that its apparent authenticity may have been greater is not important. The information sought to be given by the report was that a judgment had been recovered against the plaintiff for the amount, and, as the consequence, he was charged by it with liability to that extent. That was what the defendant's subscribers were permitted, from its report, to understand had occurred. It might or might not make inquiry, preliminarily to further credit, desirable. That might depend upon the known or unknown pecuniary ability of the party. In its relation to parties generally such would be the uncertainty of its effect. And it is the rule in its general application and effect, as to all persons in the class before referred to, that is now under consideration, because the publication of such a statement when untrue is libelous *per se* in all such cases or in none. The fact that in some cases it might result in the denial of credit, and otherwise be injurious to a party represented to be charged with liability by judgment, does not necessarily require the conclusion, as matter of law, that the publication was in itself defamatory.

But in such case the party would be entitled to his remedy,

,supported by special damages alleged as the consequence of the false publication. ·

The recovery of a judgment does not necessarily import conceded default in payment of a debt. It is a matter of frequent observation that controversies, arising apparently out of an honest difference of opinion, go into the courts for determination. Litigation also not infrequently comes from causes in which is involved no personal credit or default. There is nothing in the defendant's report to indicate that the judgment was produced by any cause prejudicial to the credit of the plaintiff, and there is no presumption in that respect upon the subject in aid of the action. There was nothing for the consideration of the jury bearing upon the question whether the publication was libelous; and we think the trial court properly held, as matter of law, that it was not such *per se.*

The plaintiff, therefore, was not entitled to recover general damages; and as no special damages were alleged, there was no question for the jury upon that subject. (*Newbold* v. *Bradstreet & Son*, 57 Md. 38; 40 Am. R. 426.)

The cases cited by the plaintiff's counsel have been examined, and none of them seem to support his contention. In *Williams* v. *Smith* (L. R., 22 Q. B. Div. 134; 39 Alb. Law J. 247) the publication in the Hatters' Gazette, London, for December, 1887, was to the effect that a judgment recovered against the plaintiff (who was a hatter) on the thirteenth day of October previous, remained unpaid. This appeared under headings and in a column known as a " black list." The judgment was recovered as stated, and had been paid. It was held that the place where the words were located in the Gazette and the inference which was permitted by their use, that the judgment remained unpaid (thus indicating the plaintiff's default), justified the interpretation given by the jury, which rendered the publication libelous. That case is distinguishable from the present one by reasons which may support that recovery without aiding the plaintiff in this action.

· In *King* v. *Patterson* (49 N. J. L. 417; 60 Am. R. 622; .8 Cent. Rep. 357; 36 Alb. L. Jour. 226) the alleged libel was

the publication of a statement to the effect, as construed, that the plaintiff, who was engaged in the clothing business, had put a chattel mortgage on her stock of goods. The case, as reported, indicates that special damages were alleged and proved ; and, so far as it there appears, the main ground of defense, upon the law, was that the publication was privileged. That was the only question considered on review. By a divided court it was held not privileged. Upon that proposition the views of the court in *Sunderlin* v. *Bradstreet* (46 N. Y. 188) were adopted.

The distinction, in principle, between the King case and the present one, as well in the character of the report as in that of the damages alleged, is obvious. There the purport of the publication was that the plaintiff had mortgaged her stock of goods to secure an existing debt, and thus placed herself in a situation liable to result in embarrassment, by means of the opportunity furnished by giving the mortgage to interrupt and break up her business. In such case an inference might be permitted that she would not place herself in that situation without an existing necessity for the protection of her business arising out of inability to pay. In that respect that case is distinguishable from *Newbold* v. *Bradstreet* (*supra*).

The additional cases cited do not seem to require any special attention or comment here.

These views lead to the conclusion that the judgment should be affirmed.

All concur, except FOLLETT, Ch. J., and VANN, J., not sitting.

Judgment affirmed.