### GALLUP v. BELMONT et al.

*(Supreme Court, General Term, Third Department.* November 30, 1891.)

LIBEL—PUBLISHING DISQUALIFICATION OF OFFICERS OF CLUB.

. A publication that the officers of a kennel club had failed to pay prizes awarded at a bench show held by the club, and that they were consequently disqualified to exercise certain privileges appertaining to an association of such clubs, does not hold up such officers to the contempt or ridicule of the community, nor impute to them any dishonest conduct in the non-payment of such prizes, and is therefore not a libel.

Appeal from special term, Albany county. Reversed.

Action by George B. Gallup against August Belmont and others for libel. The libel charged was the following publication in a newspaper:

"At the meeting of the advisory committee of this club, held September 19, 1889, it ordered the suspension of the Albany Kennel Club for the non-payment of its prizes at its show held March 5, 6, 7, and 8, 1889, and passed a resolution that if said prizes were not paid within thirty days, that the penalty under rule 28 would be enforced. The thirty days expired on the 19th day of December, 1889, and as no official notification of the payment of the arrears of prizes has ever reached this office, President Belmont, Jr., suspended all the officers of said club under rule 28, referring to the application of rule 25. I duly mailed notices to that effect to Mr. W. C. Hudson, president; George B. Gallup, secretary; and General Amasa J. Parker, Jr., and Robert C. Pruyn, members of the bench show committee. This matter is now before you, and, in accordance with the rules, the executive committee of the American Kennel Club must, in every case of suspension, at their first meeting thereafter either remove the same or impose a penalty of disqualification for such period as they may decide upon. On motion of Mr. Lewis, the secretary was instructed to notify W. C. Hudson, G. B. Gallup, A. J. Parker, Jr., and Robert C. Pruyn, of the Albany Kennel Club, that they are disqualified until the awards given by that club are paid in full.

"DISQUALIFIED.

| * | * | * | * |
|---|---|---|---|
| "William C. Hudson, | Albany, N. Y. | | |
| "G. B. Gallup, | Albany, N. Y. | | |
| "A. J. Parker, Jr., | Albany, N. Y. | | |
| "R. C. Pruyn, | Albany, N. Y. | | |
| * | * | * | * |

" 'NOTE. No person under suspension or sentence of disqualification can exhibit, or take a prize, or act as agent for any person, at any show held by a member of the American Kennel Club. No person that has been expelled from a club, a member of the American Kennel Club, can be employed in any official capacity at any show held under these rules, under penalty of suspension of the club so employing him.' Const. art. 26."

From a judgment overruling a demurrer to the complaint defendants appeal.

Argued before LEARNED, P. J., and LANDON, J.

*Lowrey, Stone & Auerbach, (Grosvenor P. Lowrey,* of counsel,) for appellants. *Parker & Fiero, (J. Newton Fiero,* of counsel,) for respondent.

LEARNED, P. J. The complaint charges that the defendants, excepting Rogers, were the members of the American Kennel Club, and publishers of the American Kennel Gazette, and that Rogers was the printer of that newspaper; that the plaintiff was a member of the Albany Kennel Club, and that said club, in March, 1889, held a bench show, and awarded prizes; that in February, 1890, the defendants published concerning plaintiff a certain libel, which is set forth at length. A second count, after stating the same preliminary matter, alleges the publication in the same paper, subsequently, of a certain other libel, also set forth at length. The defendants demurred to the complaint as not stating facts sufficient to constitute a cause of action. The demurrer was overruled at special term, and the defendants appeal.

The meaning of the words cannot be extended by innuendo beyond their natural import, aided by reference to the extrinsic facts with which they may be connected. *Woodruff* v. *Bradstreet Co.*, 116 N. Y. 217, 22 N. E. Rep. 354. The allegations in the complaint preliminary to the alleged libel are useful to explain its meaning. But the question whether the publication is libelous must be judged by the publication itself. This is not a case where the publication was made in regard to the plaintiff in connection with his business. The plaintiff alleges that he is a librarian of the Young Men's Association for Mutual Improvement in Albany, and that he holds many private trusts. But this publication has no connection with his office of librarian. Even neglect to pay prizes awarded at a dog show would not affect one's competency to perform the duties of that office; nor do these private trusts constitute any trade or occupation, as to which these publications were made. *Moore* v. *Francis*, 121 N. Y. 199, 23 N. E. Rep. 1127; *Sanderson* v. *Caldwell*, 45 N. Y. 405. The question must be, then, whether these publications held the plaintiff up to scorn or ridicule, or disgraced or degraded him in the eyes of men, or tended to do this. *Bergmann* v. *Jones*, 94 N. Y. 51; *Moffatt* v. *Cauldwell*, 3 Hun, 26; *Cooper* v. *Greely*, 1 Denio, 347. The words are not ambiguous, nor do they permit of more than one interpretation. *Lewis* v. *Chapman*, 16 N. Y. 369; *Hunt* v. *Bennett*, 19 N. Y. 173. The plaintiff claims that the words published tend to degrade him. The defendants say that they have no such tendency. The first publication purports, from its language, to be the report of some committee of the American Kennel Club, and the action of the executive committee thereon. It states that the advisory committee in September, 1889, ordered the suspension of the Albany Kennel Club for non-payment of its prizes awarded in March, 1889; that 30 days had expired, and no official notice of such payment had reached the office; that President Belmont had suspended all officers of said club, under rule 28; and that notice to that effect had been mailed to certain officers of that club, naming them, among them the plaintiff. Thereupon the publication states that the secretary was instructed by the executive committee to notify these persons, naming them, (including the plaintiff,) "that they are disqualified until the awards given by that club are paid in full." Now, it is to be observed that there is no statement of any wrongful act on the part of the persons thus disqualified. It is only stated that a club of which they were officers has neglected to pay the prizes which had been awarded; and that no official information had been subsequently received of such payment. Neither of these persons is described as treasurer, and neither of them is stated to have neglected any duty. It would seem that if any kennel club does not pay its prizes, then the American Kennel Club disqualifies the officers; or, rather, to state the matter more carefully, if the American Kennel Club is not officially notified of such payment, then it votes such disqualification. So that the only charges of neglect against these officers is a failure to notify the American Kennel Club officially of the payment of these prizes. The effect of such disqualification is not set forth. What these officers are disqualified from doing is not told to the public in the alleged libel. The question here is not as to the actual effect of the

vote of the committee, but relates to the effect on the public of the publication, as to the character of the plaintiff. There is nothing disgraceful in being disqualified. Judges of the court of appeals and justices of the supreme court are disqualified from acting at the end of the year in which they become 70 years old. It would not be libelous to publish the fact that one of these officers had become disqualified to serve.

The plaintiff in his argument says that the words charge him with a failure to discharge a pecuniary obligation. But this is not so. There is nothing which charges that these prizes were pecuniary obligations of the persons named, viz., the plaintiff, W. C. Hudson, Amasa J. Parker, and Robert C. Pruyn. If these prizes were pecuniary obligations of these persons, there would have been no hesitation as to their payment. To publish that a judgment has been recovered against the plaintiff was held not to be libelous in *Woodruff* v. *Bradstreet Co.*, *ubi supra*. Still less, then, would it be libelous on this plaintiff to say that some association had not paid a debt, of which association this plaintiff was an officer. It is not charged that the non-payment was the plaintiff's fault. We may infer that, in the organization of the American Kennel Club, it is the rule that its privileges shall not be enjoyed by officers of any other club which has not paid its prizes. But this rule, and action under it, impute no fraud or dishonesty to these officers. Many causes for which these officers are not responsible might prevent the club from paying; and, if neither the rule nor the action of the American Kennel Club makes a charge of dishonesty, it cannot be that a publication of such action gives publicity to any such charge. Nor can such a charge be inferred from the mere statement that for such non-payment by the association the plaintiff was "disqualified." Even if it be assumed that this word meant disqualified from some privilege of the American Kennel Club, there is nothing disgraceful in that statement. Unless it were known what the qualifications were for the enjoyment of such privilege, it would not be disgraceful not to possess them. It would seem that prior to December 19, 1889, the officers of this Albany Kennel Club had possessed these privileges, whatever they may have been. They are stated to have lost them because their club (not they themselves) had not paid its awarded prizes. If it had been published that this non-payment was owing to dishonesty or negligence of these officers, another question would have arisen. But nothing of that kind appears. Nor does the publication mean, as alleged in the complaint, that the plaintiff cheated and defrauded the exhibitors at the bench show. On the contrary, there is nothing in the publication which implies that the officers owed these prizes, or that the non-payment was caused by them. The second count charges the publication of a list of persons, headed "Disqualified," and containing plaintiff's name; followed by an explanation that no person under sentence of disqualification can exhibit, or take a prize, or act as agent for any person, at any show held by a member of the American Kennel Club. In this, as in the former count, we must take the words for what they fairly mean. They are not equivocal. The meaning of "disqualified" is here explained. It is that for some reason the American Kennel Club refuses to these persons the privilege of exhibiting, etc., at any show held by one of its members. The plaintiff avers that this publication set forth in the second count was intended to have it believed that plaintiff was dishonest, and that the Albany Kennel Club did not pay its awards, and that the members thereof defrauded the exhibitors. Nothing is stated in that publication as to the Albany Kennel Club or its exhibition. The article merely gives a list of the disqualified persons, and explains what such persons may not do. It does not state the cause of disqualification. So that, if there is any injurious effect in the publication, it is in that statement that these persons may not do certain things. Can it, then, tend to disgrace a person to publish that he is not allowed to exhibit or take a prize at a bench show held by a member of the American Kennel Club?

Is the exhibition at a bench show of this club such a very moral act that to be excluded is disgraceful or disreputable? We think not. If it were a matter of public knowledge that to exhibit or to take a prize at such a show required the possession of high intellectual, moral, or social qualities, then the publication of a statement that one was disqualified might be considered a statement that he did not possess these qualities, and therefore one "calculated to injure his character." The article is undoubtedly, as plaintiff claims, a statement that he, not the Albany Kennel Club, is deprived of a privilege of exhibiting. But this is no injurious statement. Construing the language according to the principle laid down in *Cooper* v. *Greely*, it imputes no wrongdoing to the plaintiff; and there is not the ambiguity in the language which leaves it open for the jury to give a construction to it. We are of the opinion that the interlocutory judgment overruling the demurrer should be reversed, and that defendants should have judgment on the demurrer, with costs.